# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

LASHUNDA ADAMS                                                    **PLAINTIFF**

**v.**                          **CIVIL ACTION NO.:  4:11-cv-00075-CWR-LRA**

**W.L. MAY AND CITY OF
NEWTON, MISSISSIPPI**                                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a Section 1983 case in which the Plaintiff, Lashunda Adams, alleges that a police officer, W.L. May, arrested her without probable cause and used excessive force during the arrest.  Adams sued May and May's employer, the City of Newton.  Before the Court is the Defendants' motion for summary judgment.  The Court, having considered the Defendants' motion and supporting memoranda of law, and Plaintiff's response and supporting memorandum in opposition to the motion, finds that the motion must be GRANTED as to the City of Newton and GRANTED IN PART as to May.

### FACTS AND PROCEDURAL BACKGROUND

On October 5, 2009, LaShunda Adams was arrested by City of Newton police officer W.L. May during a traffic stop.[1]  The incident began that morning after Adams learned that her son had been pulled over for a traffic infraction near Newton High School.[2]  Adams' friend, Bonnie Walker, arrived at Adams' house shortly after Adams received phone calls from her son

---

[1] Most of the facts are heavily disputed. However, as with all motions for summary judgment, this Court views all facts in the light most favorable to the non-movant. *Downhole Navigator, L.L.C. v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012).

[2] Pl.'s Resp. in Opp'n to Defs.' Mot. Summ. J. [Docket No. 40] Ex. 2, at 66, 70 (Adams Dep.).

and several others, notifying her that her son was involved in a traffic stop.[3]  Adams and Walker

drove to the scene of the stop together.  A second acquaintance, Deloris Blaylock, was already at

the scene.[4]   Adams' mother, Evelyn Love, arrived later.[5]

When Adams arrived, she approached Officer May and asked him why he stopped her

son.[6]  May told her that her son had been speeding, had performed an improper lane change, and

had been driving without a license.[7] Adams responded that Newton's chief of police, Harvey

Curry, had given her son permission to drive alone on his learner's permit.[8] Adams then

telephoned Curry, who told Adams "don't bother about going over there saying anything else to

Mr. May."[9]

After her conversation with Curry, Adams discussed the situation with Blaylock about 20

to 30 yards from May and Adams' son.[10]   According to Blaylock, Officer May "kept telling"

---

[3] Adams Dep. at 66-67.

[4] *Id.* at 77-80.

[5] *Id.* at 96.

[6] *Id.* at 85.

[7] *Id.* at 85-86.

[8] *Id.* at 86.

[9] *Id.* at 90.

[10] Pl.'s Resp. in Opp'n to Defs.' Mot. Summ. J. Ex. 1, at 44 (May Dep.); Pl.'s Resp. in Opp'n to Defs.' Mot. Summ. J. Ex. 3, at 24-25 (Beasley Dep.).

Adams and her friends to leave.[11]  Adams, however, insists that May never told her to leave.[12]

According to Adams, May eventually threw "down his clipboard and whatever else he had in his hand to the ground."[13]  He walked over to Adams, shoved her, and told her that she was under arrest for disturbing the peace.[14]  She "laughed it off" and walked away from May, who had begun to talk to Blaylock.[15]  Later, May approached Adams while she was talking to her son and "act[ed] as if he was angry" with Adams as he spoke to her.[16]  Adams' son attempted to intervene by "sliding his hand in between [Adams and May],"[17] although he did not touch May.[18]  The son told May, "Sir, she ain't saying anything out of the way to you. She's not all up in your face talking noise to you . . . ."[19]

May responded by "push[ing] [Adams'] son with tremendous force,"[20] which caused Adams' son to stumble backwards and almost fall.[21]  Adams then began to back away from

---

[11] Pl.'s Resp. in Opp'n to Defs.' Mot. Summ. J. Ex. 4, at 28 (Blaylock Dep.). Blaylock testified: "He [May] kept telling – asking – telling me to leave. We need to leave the scene. Need to leave the crime scene or we're going to be taken to jail, and he told Shunda the same thing."

[12] Adams Dep. at 100.

[13] *Id.* at 92.

[14] *Id.* at 92, 103.

[15] *Id.* at 103.

[16] *Id.* at 104.

[17] *Id.* at 105.

[18] *Id.* at 108; Beasley Dep. at 29.

[19] Adams Dep. at 106.

[20] *Id.*

[21] *Id.* at 106.

May,[22] and May reached for his pepper spray.[23]  Adams' son tried to jump between Adams and the pepper spray.  May sprayed them both.[24]

Adams then found herself on the ground, and she assumes that May shoved her.[25]  Adams began stumbling and "made [her] way on the other side of [her] trucks."[26] At that point, "Mr. May came up and he slammed [Adams] up against [her] truck" and began to handcuff her.[27] Adams cannot remember whether May pushed her back to the ground or whether she fell to the ground after she was handcuffed.[28] The incident allegedly re-injured a back ailment that Adams suffered several years earlier.[29]

Two months later, Adams filed for bankruptcy in December 2009.[30]  She submitted to the bankruptcy court a Schedule B, which identifies all assets and potential assets.[31]   She did not include on her Schedule B information regarding a potential claim against May and the City of Newton.[32]  After submitting her Schedule B, the bankruptcy court granted Adams' request for an

---

[22] *Id.* at 107.

[23] *Id.* at 113.

[24] *Id.*

[25] *Id.* at 116.

[26] *Id.* at 116-17.

[27] *Id.* at 117.

[28] *Id.*

[29] *Id.* at 124.

[30] Defs.' Mot. Summ. J. [Docket No. 35] Ex. Q (Pl.'s Dec. 2009 Chapter 13 Pet.).

[31] Defs.' Mot. Summ. J. Ex. R (Pl.'s Schedule B).

[32] *Id.*

extension of an automatic stay that was in place.[33]  In February 2010, the bankruptcy court also entered an order on Adams' objection to pre-petition secured claims.  The order acknowledged that Adams and a creditor had reached an agreement regarding the value of the collateral upon which the creditor held a lien, and modified and amended Adams' Chapter 13 plan.[34]  The bankruptcy was dismissed in March 2010 after Adams failed to show up for a scheduled creditors' meeting.[35]

In May 2011, Adams sued May and the City of Newton under two theories of liability.  First, she alleges that May is liable under 42 U.S.C. § 1983 for "excessive force and arrest without probable cause," and that these acts violated the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.[36]  Second, Adams' Complaint asserts that the City of Newton is liable for these acts "under the Mississippi Tort Claims Act" because May was acting within the course and scope of his employment.[37]

May and the City of Newton jointly moved for summary judgment on July 5, 2012, asserting that (1) Adams is judicially estopped from bringing her claims in this action because she did not disclose this potential litigation in bankruptcy proceedings that followed the incident; (2) Adams has not stated a claim against the City of Newton, nor is there sufficient evidence to prove liability against the City of Newton; and (3) May is shielded from liability by qualified

---

[33] Defs.' Mot. Summ. J. Ex. S (Order Extending Automatic Stay).

[34] Defs.' Reply [Docket No. 42] Ex. Z (Order on Plaintiff's Objection to Secured Claim).

[35] Defs.' Mot. Summ. J. Ex. T (Order Dismissing Debtor).

[36] Compl. [Docket No. 1] at 3.

[37] Compl. at 3-4.

immunity.[38]  In her Response in Opposition, Adams concedes that "the evidence does not support a state law claim against Defendant City of Newton," but she argues that she is not judicially estopped from bringing her claims, and that her claims against May involve disputes of material fact that should be resolved at trial.[39]  Therefore, the issues remaining for the Court's analysis are judicial estoppel and qualified immunity.

## SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40]  A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party,"[41] and a fact is material if it is one that might affect the outcome of the suit under the governing law.[42]

A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute.[43]  When evaluating a motion for summary judgment, a court refrains from making credibility determinations and does not weigh evidence or draw from the

---

[38] Defs.' Mem. in Support of Summ. J. [Docket No. 36] at 7-21.

[39] Pl.'s Resp. in Opp'n to Defs.' Mot. Summ. J. at 1.

[40] Fed. R. Civ. P. 56(a).

[41] *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987).

[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[43] Fed. R. Civ. P. 56(c)(1).

facts legitimate inferences for the movant.[44]

## ANALYSIS

### I. Judicial Estoppel

The Defendants argue that Adams is estopped from bringing this lawsuit because she failed to disclose her potential claims against the Defendants during her Chapter 13 bankruptcy proceedings that lasted from December 2009 to March 2010. By failing to do so, the Defendants allege that Adams did not fulfill the requirements for bankruptcy debtors to disclose all assets, including potential causes of action.[45]

Judicial estoppel is an equitable common law doctrine that "is invoked where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice."[46] The primary purpose is to "protect the integrity of the judicial process."[47] To determine whether judicial estoppel is warranted, courts typically determine if the following three elements are present: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently."[48] However, "the Supreme Court has refused to 'establish inflexible prerequisites or an exhaustive formula for determining the

---

[44] *Strong v. Dep't of Army,* 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005).

[45] Defs.' Mem. in Supp. of Summ. J. at 7; *see Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012).

[46] *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (quotation marks omitted).

[47] *Love*, 677 F.3d at 261 (quotation marks omitted).

[48] *Id.* (quotation marks omitted).

applicability of judicial estoppel,' stating instead that different considerations 'may inform the doctrine's application in specific factual contexts.'"[49] The Fifth Circuit has applied judicial estoppel to bar an unscheduled claim "when others, the debtors or other insiders, would benefit to the detriment of creditors if the claim were permitted to proceed."[50]

The Defendants have asserted that all of the elements supporting judicial estoppel are present in this action because of the following: (1) Adams took a plainly inconsistent position by failing to include the potential action on her bankruptcy schedule because "Adams' *mother* was threatening this lawsuit the very day the incident occurred between Adams and Officer May"; (2) the bankruptcy court accepted Adams' prior position by extending the automatic stay and entering an order on Adams' motion objecting to certain pre-petition secured claims; and (3) the threat of a lawsuit by Adams' *mother* suggests that there was no inadvertence that would excuse Adams' misrepresentation.[51] In opposition, Adams asserts that the "Defendants cannot demonstrate that the bankruptcy court accepted the Plaintiff's supposedly inconsistent prior position" because Adams filed her Chapter 13 case on December 9, 2009, and her petition was dismissed on March 8, 2010, more than a year before filing suit, based on her failure to appear at the meeting of creditors.[52] She further points out that the "bankruptcy court did not confirm Plaintiff's Chapter 13 plan, she received no discharge and the bankruptcy court entered no

---

[49] *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).

[50] *Kane*, 535 F.3d at 386.

[51] Defs.' Mem. in Support of Summ. J. at 8-9 (emphasis added); Defs.' Reply Mem. [Docket No. 43] at 3.

[52] Pl.'s Mem. in Opp'n to Defs.' Mot. Summ. J. at 4.

adjudication whatsoever pertaining to the schedule of assets."[53]  The Defendants respond that in

order for judicial estoppel to apply, "all that is required is 'that the first court has adopted the

position urged by the party, either as a preliminary matter or as part of a final disposition.'"[54]

The facts before the Court are insufficient to establish the elements of judicial estoppel.

With regard to whether Adams took a plainly inconsistent position and whether Adams

inadvertently omitted the potential claim, the Defendants' only evidence is Adams' *mother's*

comments that there would be a lawsuit.  A failure to disclose is considered inadvertent when the

debtor either did not know of the inconsistent position or had no motive for concealment.[55]  The

comments of Adams' *mother* are not sufficient evidence of Adams' knowledge of a possible

cause of action against the Defendants.  Nor should the comments of her mother bind Adams.

Furthermore, although the Defendants point out that a bankruptcy court's actions in preliminary

matters can be sufficient to establish judicial estoppel, the Defendants have not identified any

cases where preliminary bankruptcy actions have supported the application of judicial estoppel

under similar circumstances, where the lawsuit was brought over a year after the bankruptcy was

dismissed.

The bankruptcy-related cases on which the Defendants rely also do not support a finding

of judicial estoppel based on the facts before the Court.  In *Love v. Tyson Foods, Inc.*, 677 F.3d

258, 260-63 (5th Cir. 2012), for example, the Fifth Circuit affirmed a district court's dismissal of

a Title VII case on judicial estoppel grounds, where the plaintiff commenced a Chapter 13

---

[53] *Id.*

[54] Defs.' Reply Mem. at 2 (quoting *Everett v. Nat'l Union Fire Ins. Co. of Pittsburg, P.A.*, 857 F. Supp. 2d 611, 616 (S.D. Miss. 2012)).

[55] *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600-01 (5th Cir. 2005).

9

bankruptcy proceeding, filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), received a notice of right to sue from the EEOC, and filed his Title VII action, all while never disclosing the claims in the pending bankruptcy proceeding. Similarly, the debtor in *In re Coastal Plains, Inc.*, 179 F.3d 197, 202-10 (5th Cir. 1999), filed an adversary proceeding while its Chapter 11 bankruptcy was pending, without disclosing the adversary proceeding to the bankruptcy court, and was therefore subject to judicial estoppel. Debtors were also subject to judicial estoppel in *In re Superior Crewboats, Inc.,* 374 F.3d 330, 332-36 (5th Cir. 2004), when after filing for Chapter 13 bankruptcy, a husband and wife filed a state lawsuit to recover damages for injuries the husband suffered in a boating accident, but did not formally amend their bankruptcy filings.[56]

Unlike the cases above, Adams did not file her action while her bankruptcy was pending or even immediately after it was dismissed. The incident that gave rise to this case occurred on October 5, 2009. Adams filed her bankruptcy petition on December 9, 2009, and the bankruptcy case was dismissed on April 9, 2010. Adams did not file this action until May 3, 2011, over a year later. Further, Adams did not enjoy any major benefits of bankruptcy such as a discharge or confirmation of a Chapter 13 plan. The timeline does not support a finding that Adams sought to undermine the integrity of the judicial process, and as such, judicial estoppel is inappropriate.[57]

---

[56] *See also Jethroe*, 412 F.3d at 600-01 (finding that elements of judicial estoppel were satisfied when debtor filed her EEOC charge eight months before she filed her bankruptcy petition but concealed the potential claim from the bankruptcy court).

[57] Presumably, if Adams had continued her bankruptcy proceeding, she could have amended her schedule to include her claim against the Defendants before filing this action. *See Sims v. Big Lots Stores, Inc.*, No. 4:06-cv-27, 2006 WL 2805137, at *6 (S.D. Miss. Feb. 15, 2012) ("[O]ne can readily envision circumstances in which a debtor may have failed to include in her original bankruptcy schedules a cause of action that accrued pre-petition but later is duty

**II. Section 1983 Claims Against May**

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Adams' claims under 42 U.S.C. § 1983 arise from allegations that she suffered "excessive force and arrest without probable cause," and that these acts violated the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.[58] But her claims under the Eighth Amendment are due to be dismissed;[59] only her rights under the Fourth Amendment are implicated.[60] Additionally, the Fourteenth Amendment's only relevance is its incorporation of the Fourth Amendment's guarantees since Adams' Complaint invokes none of the Fourteenth Amendment's specific provisions such as the Equal Protection Clause.[61] Therefore, the Court

---

bound to amend her schedules to disclose such claim. For example, a debtor who was unaware she had a legally viable claim when she filed her petition but later realizes she has a claim, obviously must amend to disclose the claim, failing which she could later be held judicially estopped from pursuing her claim."). Because Adams' bankruptcy was dismissed, she had no opportunity to amend her bankruptcy schedule.

[58] Compl. at 3.

[59] *See Alberti v. Klevenhagen*, 790 F.2d 1220, 1224 (5th Cir. 1986) (stating that Eighth Amendment standards protect *convicted* inmates, who may be punished, but not in a "cruel and unusual" manner).

[60] *See Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (explaining that the Fourth Amendment creates a right to be free from excessive force during a seizure); *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) (stating that warrantless arrests must be supported by probable cause).

[61] *See* U.S. Const. amend. XIV, § 1.

analyzes Adams' Section 1983 claim solely as a Fourth Amendment issue.

The capacity in which Adams is suing May is also unclear. A plaintiff in a Section 1983 action may sue a natural person in his individual capacity, official capacity, or both.[62] Adams' Complaint does not state in what capacity she sued May, and the parties disagree on that point.[63] May contends that the claim was made against him in his official capacity, but Adams argues that the claim was an individual-capacity claim.[64] Since Adams is the master of her lawsuit, and she specifically seeks monetary damages from May in her Complaint,[65] the Court reviews her Section 1983 claim as one against May in his individual capacity.[66]

---

[62] *Senu-Oke v. Jackson State Univ.*, 521 F. Supp. 2d 551, 556 (S.D. Miss. 2007).

[63] Whether May was sued in his individual or official capacity is significant because a suit against a municipal officer in his official capacity is treated as a suit against the municipality. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 n.55 (1978). A plaintiff seeking to recover against a municipality under Section 1983 must provide evidence that a municipality directly violated a constitutional right through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. Adams has presented no such evidence in this case, and therefore, an action against May in his official capacity could not survive summary judgment.

[64] Pl.'s Mem. in Opp'n to Defs.' Mot. Summ. J. at 5.

[65] *See* Compl. ¶ 11.

[66] *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed.") (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)); *McKenzie v. City of Columbia*, 66 F.3d 322, at *4 (5th Cir. 1995) (unpublished table opinion) (stating that plaintiff's failure to specify the capacity in which defendants were being sued did not mean that the defendants were only sued in their official capacities, and that the district court should have resolved the uncertainty by examining the whole of the proceedings); *see also Senu-Oke*, 521 F. Supp. 2d at 557 (stating that the notion of one's acting in the course and scope of his or her employment is not inconsistent with an intention to also hold the employee personally liable); *Merrill v. Miss. Dep't of Pub. Safety*, No. 3:10-cv-681, 2011 WL 8198562, at *2 (S.D. Miss. Aug. 16, 2011) (noting that when officer and governmental entity are named defendants in suit, but officer's capacity is unclear, then the court should look to the nature of the relief sought).

May invokes qualified immunity in his defense, which "shield[s] from liability government officials performing discretionary functions."[67] Qualified immunity applies when a government official reasonably could have believed that his actions were legal.[68] "This immunity protects all but the plainly incompetent or those who knowingly violate the law . . . ."[69] Therefore, a court should not deny immunity unless "existing precedent must have placed the statutory or constitutional question *beyond debate*."[70]

After a defendant has invoked qualified immunity, a plaintiff has the burden of demonstrating that the defendant is not entitled to qualified immunity by showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[71] In determining whether a defendant violated a plaintiff's constitutional rights on a motion for summary judgment, the Court must view the evidence in the light most favorable to the plaintiff.[72] The "clearly established" standard is an objective standard that involves analyzing the facts from the perspective of "a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions."[73] If officers of reasonable competence could

---

[67] *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).

[68] *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

[69] *Id.* at 371 (quotation marks omitted).

[70] *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).

[71] *Id.*

[72] *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).

[73] *Id.* at 411.

disagree about whether a plaintiff's rights have been violated, the officer is entitled to qualified immunity.[74]

## A. Arrest Without Probable Cause

It is undisputed that Adams has a clearly established constitutional right to be free from arrest without probable cause.[75]  Therefore, if May did not have probable cause to arrest Adams, May's arrest of Adams violated her constitutional rights.  Probable cause exists when, at the time of arrest, an officer "had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime."[76]

May argues that he had probable cause to arrest Adams for violating Mississippi's disorderly conduct statute, which provides for the arrest of persons who provoke a breach of the peace by failing to obey an officer's request:

> Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person . . . shall be guilty of disorderly conduct . . . .[77]

Adams' arrest occurred after she arrived at the scene of a traffic stop involving May and her son.  According to Adams' son and one of her friends, May repeatedly instructed Adams and her friend to leave the scene of the traffic stop, and Adams responded that she was not leaving.[78]

---

[74] *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

[75] *See Herbert v. Maxwell*, 214 F. App'x 451, 454 (5th Cir. 2007) (unpublished).

[76] *Id.* at 454 (quoting *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)).

[77] Miss. Code Ann. § 97-35-7(1).

[78] Blaylock Dep. at 28-29; Beasley Dep. at 25-28.

Not surprisingly, in her deposition, Adams denied that May ever told her to leave.[79]  Adams

asserts that this contradiction in testimony creates a genuine dispute of fact that makes summary

judgment inappropriate.

Although Adams' testimony conflicts with that of several other witnesses, the Court is

not at liberty to evaluate a witness's credibility on a summary judgment motion.[80]  Thus, Adams'

denial that May ever instructed her to leave the scene shows a genuine dispute of material fact.[81]

The crux of Mississippi's disorderly conduct statute is one's refusal or failure to comply with an

officer's "obey, command, request, or order,"[82] so if May never instructed Adams to leave the

---

[79] Adams Dep. at 100 (stating in response to the question of whether May ever told her that she needed to leave the scene, "No. Not to my knowledge.").  The Court does not find persuasive May's argument that Adams' language "not to my knowledge" is tantamount to Adams admitting that she does not remember, especially given Adams' reliance on that deposition testimony to argue that before May told her she would be arrested for disturbing the peace, he "had not previously told her to leave the scene."  Pl.'s Mem. in Opp'n at 3.  Nor is the Court inclined to infer that Adams' deposition testimony is only an assertion that she did not hear May tell her to leave, as the summary judgment standard requires that reasonable inferences be made in the non-movant's favor.

[80] *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987) ("It is not the function of the trial judge, in ruling on a motion for summary judgment, to weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence.  Those are functions of the trier of fact."); *see also Chacon v. York*, 434 F. App'x 330, 332-33 (5th Cir. 2011) (unpublished) (reversing district court's grant of summary judgment in Section 1983 excessive force action where district court improperly credited deputy's version of events); *Lee v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 3:10-cv-392, 2011 WL 6781013, at *3 (S.D. Miss. Dec. 27, 2011) (stating that even where against "100 witnesses" plaintiff offers only a sliver of material evidence supporting his claim, the Court is bound to view that evidence in the light most favorable to plaintiff and to deny a motion for summary judgment).

[81] *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990) ("In ruling upon a Rule 56 motion, 'a District Court must resolve any factual issues of controversy in favor of the non-moving party' only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied.") (citation omitted).

[82] Miss. Code Ann. § 97-35-7(1).

scene, Adams could not have violated the disorderly conduct statute.  Because May's motion has

not identified any other offense for which he could have arrested Adams, there is a factual

dispute about whether probable cause existed for May to arrest Adams.[83]

The factual dispute about whether May told Adams to leave also hinders an analysis of

objective reasonableness, as measured by whether a reasonable officer would have arrested

Adams for not leaving the school grounds given the law that existed at the time of the incident.[84]

Consequently, summary judgment is inappropriate because qualified immunity can only be

determined after the factual dispute has been resolved by a fact-finder.[85]

## B. Excessive Force

Adams also contends that May violated her constitutional rights by using excessive force

during her arrest because he allegedly sprayed her with pepper spray, shoved her to the ground,

and slammed her against her vehicle while handcuffing her.[86]  "To establish a claim of excessive

---

[83] The Court recognizes that May's subjective reason for making the arrest need not be the criminal offense for which probable cause exists based on the facts.  *See Freeman*, 483 F.3d at 411 n.3 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004)).  However, May has not identified in his pleadings any offense other than disorderly conduct.

[84] *See McKinney v. City of Southaven*, No. 2:09-cv-46, 2010 WL 1380391, at *1 (N.D. Miss. Mar. 31, 2010) (Biggers, J.) (denying officer's motion for summary judgment based on qualified immunity because the "conflicting descriptions of the event at issue could hardly be more opposed," and "the existence of factual disputes preclude[d] judgment as a matter of law").

[85] *See Meadours v. Ermel*, 483 F.3d 417, 423-24 (5th Cir. 2007) (stating, after concluding that a dispute of material fact existed regarding whether plaintiff's constitutional rights had been violated, that "[i]t is for a jury to decide the factual disputes, and at this stage we cannot say the officers are entitled to qualified immunity."); *Mesa v. Prejean*, 543 F.3d 264, 271 (5th Cir. 2008) (acknowledging the requirement to analyze whether a reasonable officer would have known that he was violating clearly established law when making an arrest for plaintiff's failure to obey an order, but stating that factual ambiguities regarding what an officer said to plaintiff and how many times he said it made summary judgment inappropriate).

[86] Pl.'s Mem. in Opp'n to Defs.' Mot. Summ. J. at 3.

force under the Fourth Amendment, plaintiffs must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[87]  Excessive force claims are distinct from unlawful arrest claims; therefore, the Court's analysis of whether officer May used excessive force does not consider whether May arrested Adams without probable cause.[88]

### 1. Pepper Spray

Adams has failed to satisfy the elements of excessive force with regard to May's use of pepper spray.  The evidence does not support a finding that May's use of pepper spray was clearly excessive force, or that, to the extent the force was excessive, such excessiveness was clearly unreasonable.  Immediately before May deployed his pepper spray, he had warded off an attempt by Adams' son to intercede physically in Adams' arrest.  Adams also had begun resisting arrest.  Furthermore, Adams' son was coming back again.  The situation could have escalated out of control, so May was compelled to decide what degree of force was needed to halt Adams' son's interference and Adams' resistance to arrest.  Under these circumstances, the use of pepper spray was not clearly or unreasonably excessive.[89]

---

[87] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quotation marks omitted).

[88] *See Freeman*, 483 F.3d at 417 ("That the deputies' arrest of Freeman was unlawful on the facts alleged does not, however, mean that any force used by the deputies to effectuate the arrest was necessarily excessive.  Rather, Freeman's excessive force claim is separate and distinct from her unlawful arrest claim, and we must therefore analyze the excessive force claim without regard to whether the arrest itself was justified.").

[89] *See Skinner v. Hinds County, Miss.*, No. 3:10-cv-358, 2012 WL 3913092, at *4 (S.D. Miss. Sept. 7, 2012) (Jordan, J.) (stating that plaintiff failed to demonstrate that the use of mace was an unconstitutional use of excessive force where there was no suggestion in evidence that plaintiff had stopped resisting).
Also, Adams asserts that after she was handcuffed, "May then pushed Plaintiff to the ground and used the pepper spray on her again."  Pl.'s Mem. in Opp'n to Defs.' Mot. Summ. J.

If May did, however, violate Adams' Fourth Amendment right by spraying Adams with pepper spray, May would be entitled to qualified immunity because his actions were objectively reasonable in light of the information available to him and the law that was clearly established at the time of his actions. At the time of the incident, an officer could legally use pepper spray to exercise control over someone who resisted arrest.[90] Therefore, May's actions were objectively reasonable based on Adams' resistance and her son's interference with her arrest. May is entitled to qualified immunity regarding his actions of applying pepper spray.

### 2. "Shoving" and "Slamming"

On the issue of whether May's "shoving" and "slamming" Adams constitute excessive force, Adams has presented sufficient evidence to survive summary judgment. With regard to injury, Adams states in her opposition memorandum that "[a]s a result of the confrontation [with May], Plaintiff required immediate medical attention from emergency personnel. She has also suffered a spinal injury for which she still requires medical care."[91] She supports this assertion with her own deposition testimony that describes her alleged injuries, including "severe nerve

---

at 3. Adams' deposition does not mention May applying pepper spray to her while she was on the ground. Adams' mother, however, stated in her deposition that May "pushed [Adams] to the ground and pepper sprayed her again." Love Dep. at 22. Love clarifies later that "the first time she was pepper sprayed, she had one handcuff on . . . [a]nd then the second time, I guess she was twisting so he pepper sprayed her again," after which May was able to put the second handcuff on Adams. *Id.* at 24. This evidence does not support a finding that May's actions constituted excessive force because Adams resisted arrest.

[90] *See, e.g.*, *Stone v. Damons*, 252 F. App'x 581, 582 (5th Cir. 2007) (unpublished) (confirming district court's conclusion that plaintiff failed to show that officer used excessive force by using pepper spray, pulling plaintiff from her vehicle, and handcuffing her, when plaintiff refused to obey officer's order to exit car and further resisted arrest by attempting to roll up the window to prevent the officer from unlocking her car door).

[91] Pl.'s Mem. in Opp'n to Defs.' Mot. Summ. J. at 3-4 (citations omitted).

damage," which she attributes to being thrown to the ground and against the truck. These injuries, if substantiated, are more than *de minimis.*

The evidence also includes physical therapy and medical records relating to Adams' treatment after the incident in question. May argues that Adams' ailments stem from a pre-existing injury, not the actions giving rise to this lawsuit. However, the evidence must be viewed in the light most favorable to Adams for purposes of summary judgment. Therefore, a jury must evaluate the dispute of fact relating to whether May's actions caused Adams' injuries.

Regarding whether May's actions were clearly and unreasonably excessive, Adams has presented a factual dispute about whether Adams was resisting arrest throughout the incident. Whether the force used was objectively unreasonable depends on the circumstances of the case, including the severity of the crime, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the plaintiff was actively resisting arrest or was attempting to evade arrest.[92] Because the crime for which Adams was being arrested, disorderly conduct, is not a severe crime, and given that May did not in his motion suggest that Adams posed a threat to himself or others during the incident, whether Adams actively resisted arrest is a crucial issue. In the absence of active resistance, less force would be needed.[93]

Although May has submitted evidence that Adams resisted arrest by deposition testimony from Adams' son, mother, and friend,[94] Adams points to May's deposition to assert that "the resistance [Adams] exhibited after being pepper sprayed (but before she was slammed into the

---

[92] *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998).

[93] *See Deville*, 567 F.3d at 167-68.

[94] Blaylock Dep. at 33; Beasley Dep. at 25-31; Love Dep. at 19-20.

car) was passive."[95]  May clarified his use of the term "passive" in his deposition when he explained that after he sprayed Adams with pepper spray, she "started going limp."[96]

Adams' allegation, along with May's testimony that Adams "[went] limp" after being sprayed, suggests that Adams was not actively resisting arrest when May slammed her against her truck hard enough to re-injure her back, and then shoved her to the ground.  A jury could reasonably find that the *degree* of force May used in this case was not justifiable under the circumstances.[97]  The dispute of fact regarding whether Adams continued to actively resist arrest is material and must be resolved before a determination of objective reasonableness and, ultimately, whether May is entitled to qualified immunity.[98]

## CONCLUSION

Adams is not judicially estopped from bringing this action based on her failure to notify the bankruptcy court of the possibility of this litigation in her now dismissed bankruptcy proceeding.  Regarding the merits, Adams' claim against May for arrest without probable cause survives summary judgment because of the genuine dispute of material fact relating to whether May told her to leave the scene of the traffic stop.  Also, factual issues regarding whether May's actions caused Adams' injuries and whether Adams resisted arrest while May allegedly shoved her against her vehicle and to the ground must be resolved before qualified immunity can be

---

[95] Pl.'s Mem. in Opp. to Defs.' Mot. Summ. J. at 7-8.

[96] May Dep. at 54.

[97] *See Deville*, 567 F.3d at 167-68.  According to Fifth Circuit law, the jury could view the severity of Adams' alleged injuries as evidence of excessive force.  *See id.* at 168.

[98] *See Meadours*, 483 F.3d at 423-24 ("We express no opinion about the ultimate reasonableness of the officers' actions.  It is for a jury to decide the factual disputes, and at this stage we cannot say the officers are entitled to qualified immunity.").

determined on the excessive force claim.  However, May's use of pepper spray was reasonable under the circumstances, and he is entitled to qualified immunity on that claim.  Furthermore, as Adams has conceded, the evidence does not support a cause of action against the City of Newton.

The Defendants' motion for summary judgment is therefore GRANTED as to the City of Newton,  DENIED as to the unlawful arrest claim against May, and GRANTED in part and DENIED in part as to the excessive force claim against May.

**SO ORDERED**, this the 19th day of October, 2012.

s/Carlton W. Reeves                          
UNITED STATES DISTRICT JUDGE